JOHN LANAHAN
California State Bar No. 133091
501 West Broadway, Suite 1670
San Diego, California 92101-3526
Telephone No. (619) 237-5498
E-mail: lawnahan@sbcglobal.net

*Attorney for Defendant Jose Angel Serrano*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JANIS L. SAMMARTINO)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSE ANGEL SERRANO,<br><br>Defendant. | Criminal No. 21cr1590-JLS<br><br>**STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS** |

**I. STATEMENT OF FACTS**

The following statement of facts is based, in part, upon one hundred three pages of discovery that was produced by the Government, including the Chula Vista Police prepared on March 16, 2021, the affidavit in support of the search warrant number 21031 60019-CVPO-MSG-SW filed on March 16, 2021, the search warrant in the same case number on the same date, and the declaration of Jose Angel Serrano prepared in compliance with Local Rule 47.1(g). These facts are subject to modification in reposed to fiete theai or filings and at the time these motions are heard.

On Monday, March 15, 2021, Jose Angel Serrano left his two-storey residence

-1-                                          21cr1590-JLS

at 1760 Fernwood Road in Chula Vista with a co-worker to deliver a pallet of vodka for North San Diego County [Defendant's Exhibit A, ¶ 10]. He shared the house with his wife Jacqueline, her three daughters, and a renter, Claudia Beltran [Defendant's Exhibit A, ¶2]. The house had four bedrooms, three on the second floor and one on the first floor, which was Claudia Beltran's room and had its own entrance. The first floor also had a kitchen, dining room, family room off of the kitchen, and one and a half baths. The second floor had a master bedroom with its own bath and two walk-in closets, a den, and another bathroom. There was also an attic that could be accessed only from Mr. Serrano's walk-in closet.

About 1:00 P.M., Mr. Serrano's wife Jacqueline called the Chula Vista police and reported that he had molested one of her daughters. In response to the call, the police were able to track his car, a silver C300 Mercedes, which they located at or near Murrieta. At about 5:45 P.M., officers of the Chula Vista police department arrived at the house on Fernwood. They spoke to Mr. Serrano's wife and her daughters and the house was searched without a warrant. That search included the locked garage that has been opened by Mr. Serrano's wife and was found to contain a locked tool box. In an effort to determine its contents, the police peeked inside a small opening between the two drawers and saw two digital scales, a mirror and what appeared to be a line of cocaine. On top of the toolbox were documents that had names and numbers along with "2,000 pills." The police asked her if she had seen any pills marked with "m30" and she said she had seen some in a drawer by the bed of one of her daughters.

While one of her daughters was upstairs looking for the pills, Mr. Serrano's car was seen driving by the house. Ms. Serrano or one of her daughters told the police that he had a gun in the small of his back. The car was directed to stop by the police and it pulled into a neighbor's driveway [Defendant's Exhibit 12]. There, Mr. Serrano

was detained at gunpoint and handcuffed, he and the driver ordered out of the car and searched, DNA swabs were taken from his mouth, and he was placed in the back of a patrol car [Defendant's Exhibit A, ¶13]. No firearm was found in the car but a large amount of cash was found in the glove compartment. He told the police not to search his home without a warrant, but they continued to do so [Defendant's Exhibit A, ¶22].

The police decided to release Mr. Serrano, and after about an hour to an hour and a half later, he was told he would be free to go but would be detained while the police prepared a temporary restraining order barring him from the house [Defendant's Exhibit A, ¶19]. When Ms. Serrano and her daughters were told that Mr. Serrano would be released, she announced that she has found the key to the locked toolbox. When she was told the police could not search the garage because it was his, she said it contained the drugs he had used to sexually assault her daughter the night before. The police asked if she was willing to open the locked toolbox, and when she did she opened the toolbox and allowed them to search it despite the lack of consent by Mr. Serrano, who was detained outside.

In the first drawer of the toolbox, he police found an ounce of methamphetamine, a line of cocaine, about fifty m-30 pills, and a pay/owe list. It also contained a black Vans bag that contained a few rocks of what the police believed were methamphetamine. A later search, prior to the issuance of the warrant, the upstairs master bedroom was searched and a black and gold 9mm handgun loaded with fifteen rounds of 9mm ammunition, inscribed with "El Joey," was found in the upstairs mater bedroom.

After the locked toolbox was searched without his consent, Mr. Serrano was placed under arrest for possession of controlled substances for sale, in violation of California Health and Safety Code § 11378(f). told he was under arrest and searched again [Defendant's Exhibit A, ¶25]. This time, they found in his pants pocket what

looked like a drug pipe and a bracelet with what proved to be an electronic key to the locked safe in the bedroom rented to the tenant, Claudia Beltran [Defendant's Exhibit A, ¶26].

Later that night, sometime after midnight, an application for a search warrant of the house was presented to the Hon. Michael Groch of the Superior Court of California. The statement of probable cause detailed that Mr. Serrano's wife had stated he possessed drugs, was known to carry and conceal a loaded firearm, and that she "had pointed out" Mr. Serrano's "known drug concealed location in the garage inside a tool box." It also stated the she had "without instruction" opened the locked tool box and "alerted officers of what she found," omitting that they had told her the garage and the toolbox could not be searched because the garage and the toolbox were his. The affidavit also omitted that the locked toolbox was Mr. Serrano's and was located in the garage that was not a common area but his own personal workspace, the key to open the locked toolbox was his, and that it had been opened was opened without his consent [Defendant's Exhibit A, ¶¶ 8, 9, 28]. The affidavit also stated that after the toolbox had been opened, Ms. Serrano showed the police a black and gold 9mm handgun, loaded with fifteen rounds of 9mm ammunition, inscribed with "El Joey," and that based upon what had been found, Mr. Serrano had been arrested and charged with possession of controlled substances for sale. [Defendant's Exhibit B-5, B-7].

The warrant was issued at 12:28 A.M. on March 16, 2021 [Defendant's Exhibit C-5]. An inventory of the search was prepared at at 2:00 A.M. that night. The following items were found at the time of the search:

**Garage:**
**Inside tool box:**

1. Tupperware container with 1,012.4 grams of cocaine

     2. Several plastic bags with personal use amounts of methamphetamine

     3. One container with 15.57 grams of marijuana

     4. 57 pills marked "m-30"

     5. One 0.55 gram Viagra pill

     6. Drug paraphernalia (syringes, etc.) in toolbox

     7. Computer drive

     8. Documents inside top drawer of toolbox

     9. Certificate of title to 1316 Iris Avenue, Imperial Beach, CA

     10. 13. Drug paraphernalia in top drawer of tool box

**On top of toolbox/work bench:**

     1. Plastic baggies

     2. Pay/owe sheets in a plastic bin on top of toolbox

     3. Pay/owe sheets of top of work bench

**Safe in downstairs bedroom**

     1. 508.8 grams of cocaine in bulk

     2. 6 baggies each with approximately one ounce of cocaine.

     3. 10.26 grams of methamphetamine

     4. $46,050 US currency

     5. White duffle bag

     6. .45 cal. magazine with 8 rounds .45 cal. ammo

     7. 2 magazines each with 13 rounds of ammo

**Master Bedroom:**

     1. 2 suits of body armor

     2. "Ghost" gun

**Defendant's closet in master bedroom**

     1. Firearm parts in military style bag

   2. 9 mm ammunition produced by Ms. Serrano

   3. Firearm magazine

   4. Ammunition can

**Attic: access only by ladder through Defendant's closet in master bedroom**

   1. Ammunition in gun

   2. Black rifle case.

   3. 3 rifles (one with lever action, another AR)

**Car**:

   1. $15,000 cash

**Mr. Serrano's person:**

   1. 4 (?) Cellphones (cannot tell from inventory)

   2. Bracelet with electronic key to wall safe

   3. 3 cell phones

//

## II. THE WARRANTLESS SEARCH OF MR. SERRANO'S LOCKED GARAGE AND LOCKED TOOL BOX WERE IN VIOLATION OF THE FOURTH AMENDMENT.

**Summary of Argument**:

  The search of Mr. Serrano's locked garage and his locked tool box in the garage was without a warrant and presumptively unreasonable. Because the garage was locked and used by Mr. Serrano as his private work area, his wife could not give consent for the police to enter and therefore all items found in the garage should be suppressed as violative of the Fourth Amendment. Within that protected area, however, was an even more private area, Mr. Serrano's locked workbench that could only be accessed by a key. After his wife advised the police that this was Mr. Serrano's private area to which only he had access, they advised her they could not search it. When she produced the key that opened the toolbox, however, the items

found in it were the basis for not only Mr. Serrano's arrest and search of his person that produced the electronic key that opened the safe in the downstairs bedroom, but also the basis for search warrant to search the safe and Mr. Serrano's closet in the master bedroom and the attic that could only be accessed from his closet.

The affidavit omitted that Mr. Serrano only had access to the toolbox and falsely implied that the "uninstructed" search of the toolbox was by someone who could give consent when the police knew she could not. As a result, all the items seized in the garage, the wall safe, Mr. Serrano's bedroom closet, the attic that could only be accessed via the closet, the electronic key and the drug pipe that were seized as part of his invalid arrest must all be suppressed.

### A. Mr. Serrano' locked garage and tool box were protected by the Fourth Amendment

It is axiomatic that the home is the most protected area under the Fourth Amendment. *Payton v. New York*, 445 U.S. 573 (1980). The initial warrantless search of that area was presumptively unreasonable. *Id*., at 586.

### B. Ms. Serrano could not give consent to search the the garage and her husband's locked toolbox, where he was detained outside the home and specifically told the police he did not consent to a warrantless search of his home.

The police responded to a claim by Mr. Serrano's wife that he had molested her daughter and were invited into the residence that she shared with her husband. She could give consent to common areas they shared, but "a person can expect sole exclusionary authority against the government's warrantless searches if he has a special and private place within the joint residence." *United States v. Morning*, 64 F.3d 531, 536 (9th Cir. 1995); *United States v. Heltsley*, 33 Fed.Appx. 270, 272 (9th Cir. 2002); *United States v. Barnes*, 807 F.Supp. 1154, 1208 (N.D.Ga, 2010). Although normally an area such a garage or hallway closet would be considered a

common area do which a joint occupant could consent to search, in this case the garage was locked and access limited to Mr. Serrano only. His wife, therefore, could not consent to warrantless search of that space to which Mr. Serrano had a reasonable expectation of privacy. The initial search of the garage, which revealed some incriminating items or documents or top of the toolbox and workbench, and the "peek" inside the toolbox the revealed the digital scales, mirror and a line the police suspected was cocaine, should be suppressed.

The warrantless entry to the garage, however, was eclipsed by the later warrantless search of the locked toolbox/workbench. At that point, it was clear that Mr. Serrano had restricted access to the toolbox/workbench by locking it with a key that only he had permission to use, a fact his wife confirmed. When he returned to his house and was detained outside, making it clear that he did not consent to a warrantless search of anything in his house, his wife produced they key. The police told her she could not consent to the search, but when she opened to toolbox, they looked. That search produced many of the incriminating items the Government intends to use in this case. Their admission as evidence in this case would violate the Fourth Amendment. *Georgia v. Randolph*, 547 U.S. 103, 106 (2006).

### C. The later search warrant was the fruit of the initial illegal search

The evidence obtained as products of the illegal search of the garage and the locked toolbox/work bench were "fruits of the poisonous tree" and should therefore be suppressed by this Court. The fruits of an unlawful search or seizure, including all evidence and statements, must be suppressed in accordance with the exclusionary rule of the Fourth Amendment. *Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963). The exclusionary rule bars introduction of not only physical evidence arising from an unconstitutional search or seizure, but also intangible information acquired therefrom. See *Id*. at 485; *Silverman v. United States*, 365 U.S. 505, 511-12 (1961).

The exclusionary rule applies both to direct products of an illegal search, i.e., the physical evidence found during the search itself – and to indirect products of the illegal search – i.e., statements or physical evidence subsequently obtained in part as a result of the search – if they "bear a sufficiently close relationship to the underlying illegality." *United States v. Ladum*, 141 F.3d 1328, 1336-37 (9th Cir. 1998); see also *Wong Sun*, 371 U.S. at 485; *United States v. Rodgers*, 656 F.3d 1023, 1031 (9th Cir. 2011); *United States v. Crawford*, 372 F.3d 1048, 1054 (9th Cir. 2004) (en banc) ("It is well established that the Fourth Amendment's exclusionary rule applies to statements and evidence obtained as a product of illegal searches and seizures."). Evidence found during an illegal search cannot provide probable cause for a further search warrant; any evidence found pursuant to such a warrant must also be suppressed as "fruit of the poisonous tree." *United States v. Vasey*, 834 F.3d 782, 788 (9th Cir. 1987) (citing *Wong Sun*, 371 U.S. at 471); see also *United States v. Huguez-Ibarra*, 954 F.2d 546, 552 n.4 (9th Cir. 1992) ("It goes without saying that this 'fruit of the poisonous tree' is not to be considered in evaluating the existence of probable cause.").

The application for the search warrant relied almost exclusively upon the evidence that was found in the locked toolbox/workbench. The nexus between that illegal search and the search warrant that resulted to the search warrant for the entire house is clear. As a consequence, the items found in the locked safe in the downstairs bedroom, Mr. Serrano's private closet in the master bedroom, and the attic that could be accessed on by his private closet, must all be suppressed.

In addition, there is an additional basis to invalidate the warrant. The affidavit in support of the warrant misrepresented that Ms. Serrano, "without instruction" opened the toolbox/workbench with a key that she produced. The affidavit omits that the police knew she could not consent, especially when her husband, who was

detained outside their home and telling the police not to search his house without a warrant, was obviously not consenting. The omission of that critical fact, that would have shown that the search that provided probable cause for the warrant invalid, was itself invalidate, consequently invalidates the search warrant. *Franks v. Delaware*, 438 U.S. 154, 171-172 (1978).

### E. The arrest and search of Mr. Serrano was the result of the illegal search

The fallout from the bad search went further. Prior to the search of toolbox/workbench, Mr. Serrano was about to be released. It was when his wife was told that he was about to be released that she produced the key that resulted in the illegal search. The evidence that was found as a result of that search was used to provide the probable cause for his arrest for possession of controlled substances in violation of state law. The search of his person incident to that arrest produced the drug pipe and the electronic key that was used to open the wall safe in the downstairs bedroom that produced many of the items the Government is seeking Mr. Serrano at trial. These items, and the evidence found as a result of their seizure, must also be suppressed under the Fourth Amendment.

### CONCLUSION

For the foregoing reasons, Mr. Serrano asks that the Court suppress all items found in the garage, the wall safe, his person, bedroom closet, and attic.

Respectfully submitted,

Dated: March 4, 2022

s/ *John Lanahan*
John Lanahan,
501 West Broadway, Suite 1510
San Diego, CA 92101-8557
(619) 237-5498
E-mail: lawnahan@sbcglobal.net

*Attorney for Jose Angel Serrano*