JOHN LANAHAN
California State Bar No. 133091
501 West Broadway, Suite 1670
San Diego, California 92101-3526
Telephone No. (619) 237-5498
E-mail: lawnahan@sbcglobal.net

*Attorney for Defendant Jose Angel Serrano*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JANIS L. SAMMARTINO)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal No. 21cr1590-JLS |
| Plaintiff, ) | |
| v. ) | **STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S AMENDED MOTION TO SUPPRESS EVIDENCE** |
| JOSE ANGEL SERRANO, ) | |
| Defendant. ) | |

**I. STATEMENT OF FACTS**

The following statement of facts is based, in part, upon one hundred three pages of discovery that was produced by the Government, including the Chula Vista Police Report prepared on March 16, 2021, the affidavit in support of the search warrant number 21031 60019-CVPO-MSG-SW filed on March 16, 2021, the search warrant in the same case number issued on the same date, and the declaration of Jose Angel Serrano prepared in compliance with Local Rule 47.1(g). In addition, this amended motion also refers to body cam footage surrounding the arrest of Mr. Serrano outside his home and the warrantless search of his residence at 1760 Fernwood Drive in Chula Vista on March 15th and 16th, 2021. These facts and this

memorandum of points and authorities have been amended to incorporate add refer to the body cam footage. They are subject to modification in response to further discovery or in response to pleadings prior to or at the time these motions are heard.

    A. Index of Defense Exhibits:

    A. Declaration of Jose Serrano

    B. Affidavit in support of search warrant, submitted on March 16, 2021

    C. Search warrant, issued on March 16, 2021 at 12:28:06 A.M. PDT

    D. Body Cam videos: All from March 15, 2021[1]

        D-1: 18:12:41

        D-2: 18:54:50

        D-3: 19:04:55

        D-4: 19:07: 00

        D-5: 19:10:45

        D-6: 19:12:50

        D-7: 19:25:10

        D-8: 19:32:40

        D-9: 19:33:04

        D-10: 20:13:40

        D-11: 20:42:00

        D-12: 20:42:20

        D-13: 20:44:50

        D-14: 20:59:30

        D-15: 21:06:11

---

[1] These exhibits are subject to a protective order and have not yet been filed with this amended motion. The parties are conferring to determine how they will be presented when the motion is heard.

1  D-16: 22:54:05

2  On Monday, March 15, 2021, Jose Angel Serrano left his two-storey residence
3  at 1760 Fernwood Road in Chula Vista with a co-worker to deliver a pallet of vodka
4  for North San Diego County [Defendant's Exhibit A, ¶ 10]. He shared the house with
5  his wife Jacqueline, her three daughters, and a renter, Claudia Beltran [Defendant's
6  Exhibit A, ¶2]. The house had four bedrooms, three on the second floor and one on
7  the first floor, which was Claudia Beltran's room and had its own entrance. The first
8  floor also had a kitchen, dining room, family room off of the kitchen, and one and a
9  half baths. The second floor had a master bedroom with its own bath and two walk-in
10 closets, two additional bedrooms, a den, and another bathroom. There was also an
11 attic that could be accessed only from Mr. Serrano's walk-in closet.

12 About 1:00 P.M., Mr. Serrano's wife Jacqueline called the Chula Vista police
13 and reported that he had molested one of her daughters. At about 6:00 P.M., officers
14 of the Chula Vista police department arrived at the house on Fernwood [Defense
15 Exhibit D-1]. They spoke to Ms. Serrano and her daughters and the house was
16 searched without a warrant [Defense Exhibit D-2]. That initial search produced a
17 "ghost gun" found in a drawer in the kitchen, and three air rifles [Defense Exhibit D-
18 3]. That initial search also included the locked garage that has been opened by Mr.
19 Serrano's wife and was found to contain a locked tool box [Defendant's Exhibit D-5].
20 In an effort to determine its contents, the police pried the top drawer enough to
21 peeked inside a small opening between the two drawers and saw two digital scales,
22 a mirror and what appeared to be a line of cocaine [Defendant's Exhibit D-5] . On top
23 of the toolbox were documents that had names and numbers along with "2,000 pills"
24 [Defendant's Exhibit  D-6]. The police asked her if she had seen any pills marked
25 with "m30" and she said she had seen some in a drawer by the bed of one of her
26 daughters [Defendant's Exhibit D-6]. During this time the police were explaining to

27

28

Ms. Serrano the process of getting a restraining order on her husband [Defendant's Exhibit D-7.

While one of Ms. Serrano's daughters was upstairs looking for the pills, Mr. Serrano's car was seen driving by the house. Ms. Serrano or one of her daughters told the police that he had a gun in the small of his back. The car was directed to stop by the police to deal with the "gun thing" and it pulled into a neighbor's driveway [Defendant's Exhibit A, ¶12, Defendant's Exhibit D-8, D-9]. There, Mr. Serrano was detained at gunpoint and handcuffed, he and the driver ordered out of the car and searched, DNA swabs were taken from his mouth, and he was placed in the back of a patrol car [Defendant's Exhibit A, ¶13]. No firearm was found in the car but a large amount of cash was found in the glove compartment. He told the police not to search his home without a warrant, but they continued to do so [Defendant's Exhibit A, ¶22].

The police decided to release Mr. Serrano because there was not enough evidence to arrest him, and after about forty-five minutes after his detention he was told he would be free to go but would be detained while the police prepared a temporary restraining order barring him from the house [Defendant's Exhibit A, ¶19, Defendant's Exhibit D-10]. When Ms. Serrano and her daughters were told that Mr. Serrano would be released because there was not enough evidence to arrest him, she expressed concern over his release and stated she could get the key to the locked toolbox [Defendant's Exhibits D-11, D-12]. When she was told the police could not search the garage because it was his, she said it contained the drugs he had used to sexually assault her daughter the night before. The police asked if she was willing to open the locked toolbox, and when she did she opened the toolbox and allowed them to search it despite the lack of consent by Mr. Serrano, who was detained outside [Defendant's Exhibit D-13].

In the first drawer of the toolbox, the police found an ounce of

methamphetamine, a line of cocaine, about fifty-seven m-30 pills, and a pay/owe list. It also contained a black Vans bag that contained other items and a few rocks of what the police believed were methamphetamine [Defendant's Exhibit D-14]. Based upon that evidence, Mr. Serrano was placed under arrest for possession of controlled substances for sale, in violation of California Health and Safety Code § 11378(f) [Defendant's Exhibit A, ¶25, Defendant's Exhibit 15]. and searched. [Defendant's Exhibit D-15].

The search of his person incident to that arrest produced what looked like a drug pipe and a bracelet with what proved to be an electronic key to the locked safe in the bedroom rented to the tenant, Claudia Beltran [Defendant's Exhibit A, ¶26; Defendant's Exhibit 15]. That electronic key that was used about forty-five minutes later, prior to the issuance of a search warrant, to open the safe in the downstairs bedroom [Defendant's Exhibit D-16]. That search produced 508.8 grams of cocaine, six baggies each with about one ounce of cocaine, 105.75 grams of methamphetamine, $46,050 in cash, a disable .45 cal. handgun with eight rounds of .45 cal. ammunition, and two magazines each with thirteen round of ammunition.

Later that night, sometime after midnight, an application for a search warrant of the house was presented to the Hon. Michael Groch of the Superior Court of California. The statement of probable cause detailed that Mr. Serrano's wife had stated he possessed drugs, was known to carry and conceal a loaded firearm, and that she "had pointed out" Mr. Serrano's "known drug concealed location in the garage inside a tool box." It also stated the she had "without instruction" opened the locked tool box and "alerted officers of what she found," omitting that the police had told her the garage and the toolbox could not be searched because the garage and the toolbox were his. The affidavit also omitted that the locked toolbox was Mr. Serrano's and was located in the garage that was not a common area but his own personal

workspace, the key to open the locked toolbox was his, and that it had been opened without his consent [Defendant's Exhibit A, ¶¶ 8, 9, 28]. The affidavit also stated that after the toolbox had been opened, Ms. Serrano showed the police a black and gold 9mm handgun, loaded with fifteen rounds of 9mm ammunition, inscribed with "El Joey," and that based upon what had been found, Mr. Serrano had been arrested and charged with possession of controlled substances for sale. [Defendant's Exhibit B-5, B-7].

      The warrant was issued at 12:28 A.M. on March 16, 2021 [Defendant's Exhibit C-5]. An inventory of the search was prepared at 2:00 A.M. that night. The following items were found at the time of the search:

**Garage:**

**Inside tool box:**

    1. Tupperware container with 975.5 grams of cocaine

    2. Bag with 996 grams of cocaine

    2. Several plastic bags with personal use amounts of methamphetamine

    3. One container with 15.57 grams of marijuana

    4. 57 pills marked "m-30"

    5. One 0.55 gram Viagra pill

    6. Drug paraphernalia (mirror with tooter straws, etc.) in toolbox

    7. Computer drive

    8. Documents inside top drawer of toolbox

    9. Certificate of title to 1316 Iris Avenue, Imperial Beach, CA

    10. 13. Drug paraphernalia in top drawer of tool box

**On top of toolbox/work bench:**

    1. Plastic baggies

    2. Pay/owe sheets in a plastic bin on top of toolbox

3. Pay/owe sheets of top of work bench

**Safe in downstairs bedroom**

    1. 508.8 grams of cocaine in bulk

    2. 6 baggies each with approximately one ounce of cocaine.

    3. 105.26 grams of methamphetamine

    4. $46,050 US currency

    5. White duffle bag

    6. Disabled .45 cal. handgiun

    6. .45 cal. magazine with 8 rounds .45 cal. ammo

    7. 2 magazines each with 13 rounds of ammo

**Master Bedroom:**

    1. 2 suits of body armor

**Defendant's closet in master bedroom**

    1. Firearm parts in military style bag

    2. 9 mm ammunition produced by Ms. Serrano

    3. Firearm magazine

    4. Ammunition can

**Attic: access only by ladder through Defendant's closet in master bedroom**

    1. Ammunition in gun

    2. Black rifle case.

    3. 3 rifles (one with lever action, another AR)

**Kitchen (affidavit erroneously states it was found in upstairs master bedroom):**

    One 9mm handgun with fifteen rounds of 9mm ammunition

**Car**:

    $15,000 cash

**Mr. Serrano's person:**

1. Bracelet with electronic key to wall safe

2. 3 cell phones

## II. THE WARRANTLESS SEARCH OF MR. SERRANO'S LOCKED GARAGE AND LOCKED TOOL BOX WERE IN VIOLATION OF THE FOURTH AMENDMENT.

**Summary of Argument**:

The search of Mr. Serrano's locked garage and his locked tool box in the garage was without a warrant and presumptively unreasonable. Because the garage was used by Mr. Serrano as his private work area, his wife could not give consent for the police to enter it and therefore all items found in the locked garage should be suppressed as violative of the Fourth Amendment. Within that protected area, however, was an even more private area, Mr. Serrano's locked workbench that could only be accessed by a key. After his wife advised the police that this was Mr. Serrano's private area to which only he had access, they advised her they could not search it. When she produced the key that opened the toolbox in their presence, however, the items found in it were the basis for not only Mr. Serrano's arrest and search of his person that produced the electronic key that opened the safe in the downstairs bedroom, but also the basis for search warrant to search the safe and Mr. Serrano's closet in the master bedroom and the attic that could only be accessed from his closet.

The affidavit omitted that Mr. Serrano only had access to the toolbox and falsely implied that the "uninstructed" search of the toolbox was by someone whom the police advised could not give consent to search it. As a result, all the items seized in the garage, the wall safe, and the electronic key and the drug pipe that were seized as part of his invalid arrest must all be suppressed. In addition, all items recovered during the later search of the house pursuant to the warrant must be suppressed, because the affidavit in support of the warrant omits critical information concerning

the lack of consent to search the items in the garage, and relies upon evidence illegally seized as a result of the illegal search of the toolbox.

### A. Mr. Serrano's locked garage and tool box were protected by the Fourth Amendment

It is axiomatic that the home is the most protected area under the Fourth Amendment. *Payton v. New York*, 445 U.S. 573 (1980). The initial warrantless search of that area was presumptively unreasonable. *Id.*, at 586.

### B. Ms. Serrano could not give consent to search the garage and her husband's locked toolbox, where he was detained outside the home and specifically told the police he did not consent to a warrantless search of his home.

The police responded to a claim by Mr. Serrano's wife that he had molested her daughter and were invited into the residence that she shared with her husband. She could give consent to common areas they shared, but "a person can expect sole exclusionary authority against the government's warrantless searches if he has a special and private place within the joint residence." *United States v. Dearing*, 9 F.3d 1428-1429-30 (9th Cir. 1993); *United States v. Reed*, 15 F.3d 928, 930-932 (9th Cir. 1994); *United States v. Morning*, 64 F.3d 531, 536 (9th Cir. 1995); *United States v. Heltsley*, 33 Fed.Appx. 270, 272 (9th Cir. 2002); *United States v. Barnes*, 807 F.Supp. 1154, 1208 (N.D.Ga, 2010). Although normally an area such a garage or hallway closet would be considered a common area do which a joint occupant could consent to search, in this case the garage was locked and access limited to Mr. Serrano only. His wife, therefore, could not consent to warrantless search of that space to which Mr. Serrano had a reasonable expectation of privacy. The initial search of the garage, which revealed some incriminating items or documents or top of the toolbox and workbench, and the "peek" inside the toolbox the revealed the digital scales, mirror and a line the police suspected was cocaine, should be suppressed.

1    The warrantless entry to the garage, however, was eclipsed by the later
2 warrantless search of the locked toolbox/workbench. The initial "peek" inside the tool
3 box exceeded the "plain view" exception, because (1) it involved looking into the
4 toolbox from the vantage point of the garage, Mr. Serrano's private workspace in the
5 house and (2) involved moving the top drawer of the toolbox in order to shine a light
6 inside and see the contents. *Arizona v. Hicks*, 480 U.S. 321, 326-328. At that point,
7 it was clear that Mr. Serrano had restricted access to the toolbox/workbench by
8 locking it with a key that only he had permission to use, a fact his wife confirmed.
9 When he returned to his house and was detained outside, making it clear that he did
10 not consent to a warrantless search of anything in his house, his wife initially aided
11 in the "peek" by giving them access to the toolbox. When the police told her that she
12 could not consent to the search of the toolbox, she opened it anyway, and they looked.
13 The police knew she did not have the authority to consent to the search of the
14 toolbox, but they let her do it and then proceeded to search the toolbox for its
15 contents. Even though Ms. Serrano was a private citizen and not a Government agent,
16 the police knew of and acquiesced in the intrusive conduct and Ms. Serrano was
17 acting to aid law enforcement to serve her own interest of having her husband
18 arrested. That search produced many of the incriminating items the Government
19 intends to use in this case. See *United States v. Reed*, 15 F.3d 928, 931 (9th Cir. 1994);
20 *United States v. Miller*, 688 F.2d 652, 657 (9th Cir. 1982). Their admission as
21 evidence in this case would violate the Fourth Amendment. *Georgia v. Randolph*, 547
22 U.S. 103, 106 (2006), *United States v. Heltsley*, 33 Fed.Appx. 270-271 (9th Cir. 2002).

**C. The later search warrant was the fruit of the initial illegal search**

24    The fallout from the initial illegal search of the toolbox had a cascading effect.
25 It resulted in the arrest of Mr. Serrano after he had been told he would be released.
26 The search incident to that arrest produced the electronic key found in his pants

pocket. That key was used to open the locked safe in the downstairs bedroom. The items found in the locked toolbox appeared in the affidavit in support of the search warrant, which resulted in the search of the entire house. That search produced the ammunition, and bullet proof vest found in Mr. Serrano's closet in the master bedroom upstairs and the rifles found in the attic which was entered via the closet in the master bedroom.

Prior to the search of toolbox/workbench, Mr. Serrano was about to be released [Defendant's Exhibit D-10]. It was when his wife was told that he was about to be released that she produced the key that resulted in the illegal search of the toolbox [Defendant's Exhibit D-11, D-12, D-13]. The evidence that was found as a result of that search was used to provide the probable cause for his arrest for possession of controlled substances in violation of state law [Defendant's Exhibit B-6]. The search of his person incident to that arrest produced the drug pipe and the electronic key that was used to open the wall safe in the downstairs bedroom that produced many of the items the Government is seeking Mr. Serrano at trial. These items, and the evidence found as a result of their seizure, were also used to support the search warrant that resulted in the later search of the house that produced the firearms and ammunition found in Mr. Serrano's closet in the master bedroom and the attic that was accessed by that master bedroom. All of these items must be suppressed under the Fourth Amendment.

The evidence obtained as products of the illegal search of the garage and the locked toolbox/work bench were "fruits of the poisonous tree" and should therefore be suppressed by this Court. The fruits of an unlawful search or seizure, including all evidence and statements, must be suppressed in accordance with the exclusionary rule of the Fourth Amendment. *Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963). The exclusionary rule bars introduction of not only physical evidence arising from an

unconstitutional search or seizure, but also intangible information acquired therefrom. See *Id*. at 485; *Silverman v. United States*, 365 U.S. 505, 511-12 (1961).

The exclusionary rule applies both to direct products of an illegal search, i.e., the physical evidence found during the search itself – and to indirect products of the illegal search – i.e., statements or physical evidence subsequently obtained in part as a result of the search – if they "bear a sufficiently close relationship to the underlying illegality." *United States v. Ladum*, 141 F.3d 1328, 1336-37 (9th Cir. 1998); see also *Wong Sun*, 371 U.S. at 485; *United States v. Rodgers*, 656 F.3d 1023, 1031 (9th Cir. 2011); *United States v. Crawford*, 372 F.3d 1048, 1054 (9th Cir. 2004) (en banc) ("It is well established that the Fourth Amendment's exclusionary rule applies to statements and evidence obtained as a product of illegal searches and seizures."). Evidence found during an illegal search cannot provide probable cause for a further search warrant; any evidence found pursuant to such a warrant must also be suppressed as "fruit of the poisonous tree." *United States v. Vasey*, 834 F.3d 782, 788 (9th Cir. 1987) (citing *Wong Sun*, 371 U.S. at 471); see also *United States v. Huguez-Ibarra*, 954 F.2d 546, 552 n.4 (9th Cir. 1992) ("It goes without saying that this 'fruit of the poisonous tree' is not to be considered in evaluating the existence of probable cause.").

The application for the search warrant relied almost exclusively upon the evidence that was found in the locked toolbox/workbench [Defendant's Exhibit B-6]. The one exception was a reference to a firearm and fifteen rounds of ammunition [Defendant's Exhibit B-7]. Unlike possession of cocaine, fentanyl, and cocaine, however, possession of a firearm and ammunition is not illegal. The affidavit failed to allege that Mr. Serrano had felony convictions, and therefore the reference to the firearm would not be indicative of illegal activity to provide sufficient probable cause in support of a search warrant. The warrant therefore had to be based upon the

illegally seized evidence located in the locked toolbox. The nexus between that illegal search, Mr. Serrano's later arrest and the search incident that arrest, the search of the safe in the downstairs bedroom using the key found during the search incident to the arrest, and the search warrant that resulted to the later search of the entire house is clear. As a consequence, the items found in the locked toolbox, the pipe and electronic key found on Mr. Serrano's person, the contents of safe in the downstairs bedroom, the items found in Mr. Serrano's private closet in the master bedroom, and the attic that could be accessed only by his private closet, must all be suppressed.

There is an additional basis to invalidate the warrant. The affidavit in support of the warrant misrepresented that Ms. Serrano, "without instruction" opened the toolbox/workbench with a key that she produced. The affidavit omits that the police knew she could not consent, especially when her husband, who was detained outside their home and telling the police not to search his house without a warrant, was obviously not consenting. The omission of that critical fact, which would have shown that the search of the toolbox that provided probable cause for the warrant invalid, was itself invalid, and consequently invalidates the search warrant. *Franks v. Delaware*, 438 U.S. 154, 171-172 (1978).

**CONCLUSION**

For the foregoing reasons, Mr. Serrano asks that the Court suppress all items found in the garage, the wall safe, his person, bedroom closet, and attic.

Respectfully submitted,

Dated:  May 27, 2022

s/ *John Lanahan*
John Lanahan,
501 West Broadway, Suite 1510
San Diego, CA 92101-8557
(619) 237-5498
E-mail: lawnahan@sbcglobal.net

*Attorney for Jose Angel Serrano*