JOHN LANAHAN
California State Bar Number 133091
501 West Broadway, Suite 1510
San Diego, California 92101-3526
Telephone: (619) 237-5498
E-mail: lawnahan@sbcglobal.net

*Attorney for Defendant Jose Angel Serrano*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### (HONORABLE JANIS L. SAMMARTINO)

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 21cr1590-JLS |
| Plaintiff, | |
| v. | **DEFENDANT'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE AS THE RESULT OF AN ILLEGAL SEARCH** |
| JOSE ANGEL SERRANO, | |
| Defendant. | |

TO:   RANDY S. GROSSMAN, UNITED STATES ATTORNEY, and
CONNIE WU, ASSISTANT UNITED STATES ATTORNEY

## I. SUPPLEMENTAL STATEMENT OF FACTS BASED UPON EVIDENTIARY HEARING

Since the filing of Mr. Serrano's Amended Motion to Suppress, the Government filed an opposition and the Court conducted an evidentiary hearing. The facts in this memorandum are based upon the initial declaration of Mr. Serrano, the affidavit in support of the search warrant, the five defense video exhibits (three of which are the same as the Government's three video exhibits) admitted during the evidentiary hearing, and the testimony of Agent/Detective Myers of the Chula Vista Police

1    Department, the sole witness at the hearing.[1]

2          The following facts are not in dispute. At about 1:00 P.M. on March 15, 2021,
3    Mr. Serrano's wife Claudia called the Chula Vista Police and reported that Mr. Serrano
4    had sexually assaulted her daughters the night before. The police arrived at their joint
5    single family residence at 1760 Fernwood Drive in Chula Vista around 6:00 P.M. At
6    that time, Mr. Serrano was not there. Ms. Serrano gave the police consent to search the
7    upstairs bedrooms, one of which was their shared master bedroom, the upstairs
8    bathrooms, and gave consent for the police to seize items related to the charges of
9    sexual assault, to which Mr. Serrano has since pleaded guilty. That search and the
10   seizure of those items are not the basis for this motion.

11         While the police were conducting a search of common areas of the house to
12   which Ms. Serrano could five consent to search, Mr. Serrano arrived back and he was
13   detained for about an hour and a half [Defendant's Exhibit A, ¶¶ 13-16]. A search of
14   his person and his car did not produce anything illegal or a firearm, and he was told he
15   was told he was free to go but could not go back into his home [Defense Exhibit A, ¶
16   18]. While he was being held outside, Ms. Serrano opened an interior door to the
17   garage, which was Mr. Serrano's "man cave" that had his motorcycles and a locked
18   toolbox. The garage was used to shelter family pets and a refrigerator was used and
19   accessed by family members [Defendant's Exhibit D-5, Govt's Ex. Rape-4]. The
20   locked toolbox, however, was Mr. Serrano's and his wife did not have permission or
21   a key to open it [Defendant's Exhibit D-5, Govt's Ex. Rape-4]. Agent Myers told Ms.
22   Serrano they could not open the box without a warrant, but he did use a flashlight to
23   peer into the contents of the top drawer and saw what he thought was a line of cocaine
24   [Defendant's Exhibit D-7, Govt's Ex. Rape-15]. As he testified at the hearing, that was

25

26         [1]Mr. Serrano objects to the Government efforts to refer Govt's Ex. R35 and R2, which are
27   not on the list of exhibits that wer admitted at the end of the hearing on November 1st. These are
     related to the search of items or the DNA swab of Mr. Serrano that related to the charges in the
28   state case.

1 | not sufficient for him to arrest Mr. Serrano or to get a search warrant for the house.

2 | As Ms. Serrano was preparing to leave the house with her daughter to be given

3 | a SART exam related to the charges of sexual assault, she was told that Mr. Serrano

4 | had not been arrested and Agent Myers expressed concern that Ms. Serrano might be

5 | armed [Defendant's Exhibit D-12]. In response to this, she produced a key ring with

6 | a number of keys, one of which opened the toolbox [Defendant's Exhibit D-13]. Agent

7 | Myers followed her to the toolbox and looked on as she searched the top drawer and

8 | items were seen that indicated the presence of drugs [Defendant's D-14]. At that point,

9 | the police took over and did a full on search of the contents of the toolbox, which

10 | contained many illegal substances and, in the opinion of Agent Myer, was sufficient

11 | probable cause to arrest Mr. Serrano on drug charges under California law.

12 | As a result of that search, Mr. Serrano was arrested on drug charges and a search

13 | of his person incident to his arrest produced an electronic key that was later used to

14 | search the safe in the bedroom used by Claudia Beltran. [Defendant's  Exhibit A, ¶¶

15 | 20, 25-26, Govt's Ex. R36].[2] The items found the as a result of the warrantless search

16 | of the toolbox were later used as a basis for the search warrant that produced other

17 | items that form the basis for the federal drug and firearm charges in this case

18 | [Defendant's Exhibit B and C].

19 | **II. THE WARRANTLESS SEARCH OF THE TOOLBOX**

20 | **WITHOUT MR. SERRANO'S CONSENT WAS IN VIOLATION OF THE FOURTH AMENDMENT**

21 | The evidence as a result of the hearing shows that Mr. Serrano's locked toolbox

22 | was his private space to which only he had access. The police recognized that and told

23 | Ms. Serrano that they could not search it without a warrant. In response to that, she

24 | opened the toolbox without Mr. Serrano's consent, in effect giving the police access

25 | to it.

26 |

27 | [2]This exhibit was not admitted at the hearing, but Mr. Serrano does not object to the

28 | Court considering it to show when and why Mr. Serrano was arrested.

-3-                          21cr1590-JLS

In its opposition to this motion, the Government relies upon *United States v. Tando*, 68 F.App'x 85, 86 (9th Cir. 2003); and *United States v. Jacobsen*, 466 U.S. 109, 117 (1984). Both can be distinguished. In *Tando*, the Court found that a mother who had authority over her son who lived with her could give consent for law enforcement to search his bedroom. That, however, differs from this case where it was clear that Ms. Serrano did not have access to her husband's locked tool box/work bench. Locks make a difference. For example, in *United States v. Franco,* 744 Fed.Appx.360 (9th Cir. 2018), the Court found that because the defendant's bedroom was locked, it was not a common area to which his parents could consent to search or was covered by his brother's Fourth Waiver who also lived in the house.

In *Jacobsen*, a search by Fed Ex to determine if a package had been damaged by a forklift revealed white powder that the company reported to law enforcement. A test of the powder revealed it was cocaine, which lead to the seizure of the package and the arrest of the defendants. The Supreme Court held that a search by a private company unrelated to law enforcement did not violate the Fourth Amendment. In this case, however, the search of the toolbox was *during and related to* the general *warrantless search of Mr, Serrano's residence*. Ms. Serrano could consent to areas or things to which they both had access, but she could not consent to the search of a locked toolbox to which only her husband had access.  Her actions in this case were just that.

This leads to the glaring omission of the Government to address the core of this motion, that Ms. Serrano could not give consent to search the toolbox that revealed the evidence that resulted in Mr. Serrano's arrest and the further search of the house that produced the drugs, firearms, and ammunition seized in this case. As noted in Mr. Serrano's amended motion, Ms. Serrano could give consent to common areas they shared, but "a person can expect sole exclusory authority against the government's warrantless searches if he has a special and private place within the joint residence." *United States v. Dearing*, 9 F.3d 1428-1429-30 (9th Cir. 1993); *United States v. Reed*,

1   15 F.3d 928, 930-932 (9th Cir. 1994); *United States v. Morning*, 64 F.3d 531, 536 (9th

2   Cir. 1995); *United States v. Heltsley*, 33 Fed.Appx. 270, 272 (9th Cir. 2002); *United*

3   *States v. Barnes*, 807 F.Supp. 1154, 1208 (N.D.Ga, 2010). Although normally an area

4   such a garage or hallway closet would be considered a common area do which a joint

5   occupant could consent to search, in this case the toolbox was locked and access to it

6   was limited to Mr. Serrano only. His wife, therefore, could not consent to warrantless

7   search of that space to which Mr. Serrano had a reasonable expectation of privacy.

8   The "peek" into the locked toolbox by Agent Myers, which revealed what he

9   thought was a line of cocaine, exceeded the "plain view" exception, because it involved

10  manipulating the top drawer of the toolbox in order to shine a light inside and see the

11  contents. *Arizona v. Hicks*, 480 U.S. 321, 326-328. At that point, it was clear that Mr.

12  Serrano had restricted access to the toolbox/workbench by locking it with a key that

13  only he had permission to use, a fact his wife confirmed. When he returned to his house

14  and was detained outside, making it clear that he did not consent to a warrantless

15  search of anything in his house, his wife initially aided in the "peek" by giving them

16  access to the toolbox. When the police told her that she could not consent to the search

17  of the toolbox, she opened it anyway, and they looked. The police knew she did not

18  have the authority to consent to the search of the toolbox, but they let her do it and then

19  proceeded to search the toolbox for its contents.

20  Even though Ms. Serrano was a private citizen and not a Government agent, the

21  police knew of and acquiesced in the intrusive conduct and Ms. Serrano was acting to

22  aid law enforcement to serve her own interest of having her husband arrested. That

23  search produced many of the incriminating items the Government intends to use in this

24  case. See *United States v. Reed*, 15 F.3d 928, 931 (9th Cir. 1994); *United States v.*

25  *Miller*, 688 F.2d 652, 657 (9th Cir. 1982). Their admission as evidence in this case

26  would violate the Fourth Amendment. *Georgia v. Randolph*, 547 U.S. 103, 106 (2006),

27  *United States v. Heltsley*, 33 Fed.Appx. 270-271 (9th Cir. 2002).

28  //

-5-                    21cr1590-JLS

### C.  The later search warrant was the fruit of the initial illegal search

The fallout from the initial illegal search of the toolbox had a cascading effect. It resulted in the arrest of Mr. Serrano after he had been told he would be released. The search incident to that arrest produced the electronic key found in his pants pocket. That key was used to open the locked safe in the downstairs bedroom. The items found in the locked toolbox appeared in the affidavit in support of the search warrant, which resulted in the search of the entire house. That search produced the ammunition, and bullet proof vest found in Mr. Serrano's closet in the master bedroom upstairs and the rifles found in the attic which was entered via the closet in the master bedroom.

Prior to the search of toolbox/workbench, Mr. Serrano was about to be released It was when his wife was told that he was about to be released that she produced the key that resulted in the illegal search of the toolbox [Defendant's Exhibit D-12, D-13]. The evidence that was found as a result of that search was used to provide the probable cause for his arrest for possession of controlled substances in violation of state law [Defendant's Exhibit B-6]. The search of his person incident to that arrest produced the drug pipe and the electronic key that was used to open the wall safe in the downstairs bedroom that produced many of the items the Government is seeking Mr. Serrano at trial. These items, and the evidence found as a result of their seizure, were also used to support the search warrant that resulted in the later search of the house that produced the firearms and ammunition found in Mr. Serrano's closet in the master bedroom and the attic that was accessed by that master bedroom.[3] All of these items must be suppressed under the Fourth Amendment.

The evidence obtained as products of the illegal search of the garage and the locked toolbox/work bench were "fruits of the poisonous tree" and should therefore be suppressed by this Court. The fruits of an unlawful search or seizure, including all evidence and statements, must be suppressed in accordance with the exclusionary rule

---

[3]The guns pictured in the bodycam videos of the initial search of the house were air rifles.

of the Fourth Amendment. *Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963). The exclusionary rule bars introduction of not only physical evidence arising from an unconstitutional search or seizure, but also intangible information acquired therefrom. See *Id*. at 485; *Silverman v. United States*, 365 U.S. 505, 511-12 (1961).

The exclusionary rule applies both to direct products of an illegal search, i.e., the physical evidence found during the search itself – and to indirect products of the illegal search – i.e., statements or physical evidence subsequently obtained in part as a result of the search – if they "bear a sufficiently close relationship to the underlying illegality." *United States v. Ladum*, 141 F.3d 1328, 1336-37 (9th Cir. 1998); see also *Wong Sun*, 371 U.S. at 485; *United States v. Rodgers*, 656 F.3d 1023, 1031 (9th Cir. 2011); *United States v. Crawford*, 372 F.3d 1048, 1054 (9th Cir. 2004) (en banc) ("It is well established that the Fourth Amendment's exclusionary rule applies to statements and evidence obtained as a product of illegal searches and seizures."). Evidence found during an illegal search cannot provide probable cause for a further search warrant; any evidence found pursuant to such a warrant must also be suppressed as "fruit of the poisonous tree." *United States v. Vasey*, 834 F.3d 782, 788 (9th Cir. 1987) (citing *Wong Sun*, 371 U.S. at 471); see also *United States v. Huguez-Ibarra*, 954 F.2d 546, 552 n.4 (9th Cir. 1992) ("It goes without saying that this 'fruit of the poisonous tree' is not to be considered in evaluating the existence of probable cause.").

The application for the search warrant relied almost exclusively upon the evidence that was found in the locked toolbox/workbench [Defendant's Exhibit B-6]. The one exception was a reference to a firearm and fifteen rounds of ammunition [Defendant's Exhibit B-7]. Unlike possession of cocaine, fentanyl, and cocaine, however, possession of a firearm and ammunition is not illegal. The affidavit failed to allege that Mr. Serrano had felony convictions, and therefore the reference to the firearm would not be indicative of illegal activity to provide sufficient probable cause in support of a search warrant. The warrant therefore had to be based upon the illegally seized evidence located in the locked toolbox. The nexus between that illegal search,

Mr. Serrano's later arrest and the search incident that arrest, the search of the safe in the downstairs bedroom using the key found during the search incident to the arrest, and the search warrant that resulted to the later search of the entire house is clear. As a consequence, the items found in the locked toolbox, the pipe and electronic key found on Mr. Serrano's person, the contents of safe in the downstairs bedroom, the items found in Mr. Serrano's private closet in the master bedroom, and the attic that could be accessed only by his private closet, must all be suppressed.

Unlike the search and seizure of items related to the sexual assault charges, the search that produced the items that underlie the charges in this case was the result of Ms. Serrano's consent to open and search and area to which she did not have access. The other exception to the warrant requirement, exigent circumstances, did not exist. Mr. Serrano was going to be released because the police had determined he was neither armed not dangerous. Agent Myers in fact expressed concern that Ms. Serrano not be armed for fear that she might retaliate against he husband given the nature of the charges.

**CONCLUSION**

For the reasons set forth in Mr. Serrano's amended motion to suppress evidence and this supplemental memorandum, he asks that the Court suppress the items found in the locked toolbox, his person after his arrest, the wall safe that was opened by the key found on him, and the firearms and ammunition seized during the execution of the march warrant.

Respectfully submitted,

Dated: November 15, 2022            s/ *John Lanahan*
                                    JOHN LANAHAN
                                    *Attorney for Defendant Jose Angel Serrano*