RANDY S. GROSSMAN
United States Attorney
CONNIE V. WU (#297177)
Assistant United States Attorney
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-8592
Connie.Wu@usdoj.gov

Attorneys for the United States of America

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSE ANGEL SERRANO,<br>a.ka. "El Joey,"<br><br>Defendant. | Case No.: 21-cr-1590-JLS<br><br>**UNITED STATES' SUPPLEMENTAL BRIEFING REGARDING THE CONSTITUTIONALITY OF 18 U.S.C. § 922(k) AND 26 U.S.C. §§ 5861(d), 5871**<br><br>The Honorable Janis L. Sammartino<br>Date: January 20, 2023<br>Time: 1:30 p.m. |

The United States of America, by and through its counsel, Randy S. Grossman, United States Attorney, and Connie V. Wu, Assistant United States Attorney, hereby files its supplemental briefing ordered by the Court regarding the constitutionality of 18 U.S.C. § 922(k) and 26 U.S.C. §§ 5861(d), 5871. This briefing is based upon the files and records of the case, together with the attached statement of facts and memorandum of points and authorities.

## I.

## <u>INTRODUCTION</u>

On November 16, 2022, this Court ordered the parties to provide supplemental briefing regarding concerning the constitutionality of 18 U.S.C. § 922(k) and 26 U.S.C.

§§ 5861(d), 5871 in light of the Supreme Court's decision in *New York State Rifle & Pistol Association v. Bruen. See* ECF No. 59, 62.

### III.

### ARGUMENT

**A.    Possession of an Unregistered Silencer Under § 5861(d) Is Not Protected by the Second Amendment.**

*1.    Silencers are not "arms" under the Second Amendment.*

First and foremost, silencers are not "arms" within the meaning of the Second Amendment. *Heller* made clear that Second Amendment applies to "bearable arms." *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008). And although the protection might extend to things necessary to use arms, like magazines or ammunition, it doesn't extend simply to anything that can be attached to a firearm but isn't necessary for its use. Several courts have held that silencers are not protected by the Second Amendment in analysis that is not affected by *Bruen. See United States v. Cox*, 906 F.3d 1170, 1184-88 (10th Cir. 2018); *United States v. Al-Azhari*, 2020 WL 7334512, at *3 (M.D. Fla. Dec. 14, 2020); *United States v. Hasson*, 2019 WL 4573424, at *3-5 (D. Md. Sept. 20, 2019).

*2.    Silencers are "dangerous or unusual weapons" under Heller.*

Even if silencers were to be considered "arms," they are "dangerous or unusual weapons" under *Heller*. 554 U.S. at 627. Indeed, *Bruen* reiterated that there is no "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." 142 S. Ct. at 2128 (quoting *Heller*, 554 U.S. at 626). Silencers were regarded as dangerous almost immediately after their invention in 1908 and restricted in at least 15 states from 1909 to 1936 because of the perception that they aided the commission of undetected crime. *See,* Robert J. Spitzer, *Gun Accessories and the Second Amendment*, 83 L. & Contemp. Probs. 231, 246-49 (2020). In fact, in 1930, the silencer's original inventor and his company stopped manufacturing silencers due to this very perception. *Id.*

2

### 3.   *Registration requirements do not infringe the Second Amendment.*

But even if this Court were to conclude that silencers are "arms" and not "dangerous or unusual," it should still deny the Defendant's motion because the registration requirement does not "infringe" on the right to keep and bear arms. Under *Bruen*, the government only needs to point to historical analogues "[w]hen the Second Amendment's plain text covers an individual's conduct." 142 S. Ct. 2129-30. The Amendment does not say the right to keep and bear arms cannot be "burdened in any way," but that it shall not be "infringed." And administrative burdens that stop far short of disarming law-abiding citizens do not "infringe" the right to keep and bear arms. *See* Webster's 1828 American Dictionary of the English Language (defining "infringe" as "[t]o break; to violate; to transgress" and "[t]o destroy or hinder").

*Bruen* did not disturb the "shall issues" licensing laws that exist in 43 states. 142 S. Ct. at 2138 n.9. Justice Kavanaugh's concurrence emphasized that states can constitutionally require license applicants to "undergo fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible requirements." 142 S. Ct. at 2162. If such administrative burdens on the carrying of firearms are permissible, then surely administrative burdens such as a registration requirement must also be permissible.

Section 5861(d) is not a prohibition on firearms, but rather codifies the registration regime in the National Firearms Act of 1934 for certain types of firearms, including the short-barreled rifles at issue in this case. *See Cox*, 906 F.3d at 1179 (discussing at length the National Firearms Act taxation and licensing scheme for short-barreled weapons). It is not a discretionary licensing regime of the sort addressed in *Bruen*. The National Firearms Act, which is set forth within the Internal Revenue Code, imposes a tax on covered firearms and requires the government to "maintain a central registry of all [such] firearms in the United States." 26 U.S.C. § 5841(a). *Bruen* did not undermine this regime; rather, *Bruen* specifically approved of regulatory regimes, including licensing regimes for carrying firearms, so long as those regimes are open to ordinary, law-abiding citizens. 142

S. Ct. at 2156; *see also id.* at 2161 (Kavanaugh, J., concurring). Section 5861(d) does not require "demonstrating to government officers some special need" to possess a silencer in the discretionary manner that *Bruen* held unconstitutional. 142 S. Ct. at 2156. Rather, the regulatory regime here simply attempts to track ownership by law-abiding citizens through a registration requirement.

Several courts around the country, including courts in the Ninth Circuit, have rejected challenges to prosecutions under § 5861(d) for possessing unregistered dangerous weapons. *See, e.g., United States v. McCartney*, 357 Fed. App'x 73, 76 (9th Cir. 2009) (holding that silencers are not protected by the Second Amendment as they are "'not typically possessed by law-abiding citizens for lawful purposes'" (quoting *Heller*, 554 U.S. at 625)); *United States v. Grey,* No. 18-CR-00412-CAS-1, 2018 WL 4403979, at *13 (C.D. Cal. Sept. 13, 2018) (holding that the registration requirement does not violate the Second Amendment); *United States v. Wilson,* 979 F.3d 889, 903 (11th Cir. 2020) (rejecting challenge to 26 U.S.C. §§ 5861(d) and 5871, prohibiting possession of unregistered sawed-off shotgun, as barred by *Miller*).

Nothing in *Bruen* disturbs the well-established precedent that silencers are excluded from Second Amendment protections. And in addition, as explained, Section 5861(d) does not ban these weapons but merely requires their registration. Possession of a silencer does not implicate any constitutional right.

**4.    Possession of a Firearm with an Obliterated Serial Number is Not Protected by the Second Amendment.**

*1.    The possession of a firearm with an obliterated serial number falls outside the scope of the Second Amendment.*

First, the Second Amendment only proscribes laws that "infringe[ ]" on the protected right to "keep and bear Arms." Nothing in § 922(k) infringes that right. *See, e.g.,* Webster's 1828 American Dictionary of the English Language (defining "infringe" as "[t]o break; to violate; to transgress" and "[t]o destroy or hinder"). As the Third Circuit remarked, "Section 922(k) did not bar Marzzarella from possessing any otherwise lawful

marked firearm for the purpose of self-defense, and a person is just as capable of defending himself with a marked firearm as with an unmarked firearm. With or without a serial number, a pistol is still a pistol." *United States v. Marzzarella*, 614 F.3d 85, 94 (3d Cir. 2010). The lack of any infringement of the core Second Amendment right places the statute outside the text of what the Second Amendment covers. The fact that the law affects gun ownership and requires a single, objective criteria—a serial number—prior to possession is not sufficient "infringe[ment]" to render the statute unconstitutional. That single restriction is less onerous than the "narrow, objective, and definite" fingerprint, training, and background restrictions imposed on the "shall issue" licensing regimes that the Supreme Court found unproblematic. *Bruen*, 142 S. Ct. at 2138, n. 9.; *see also id.* at 2161-62 (Kavanaugh, J., concurring). Like § 922(k), those "shall issue" regimes will result in certain individuals being unable to possess firearms—those who fail the objective checks, tests, and analysis—but that fact alone does not render the statute unconstitutional. Section § 922(k) does not destroy or hinder the ability to own a gun any more than the "reasonable, well-defined restrictions" *Bruen* concluded would be permissible. *Id.* at 2156.

Regardless, Defendant is not a law-abiding citizen whose right to bear arms is protected by the Second Amendment. As the Supreme Court has made clear, the Second Amendment protects the right of "law-abiding citizens" who may bear firearms for "lawful purposes." *Heller,* 554 U.S. at 625; *accord Bruen*, 142 S. Ct. at 2122 (the Second Amendment right is limited to "lawabiding" citizens seeking to execute a lawful purpose). Here, Defendant was not acting as a law-abiding citizen; he was law-evading. As the Third Circuit noted in *Marzzarella*, "[the defendant] does not assert, any lawful purpose served by obliterating a serial number on a firearm. Because a firearm with a serial number is equally effective as a firearm without one, there would appear to be no compelling reason why a law-abiding citizen would prefer an unmarked firearm. These weapons would then have value primarily for persons seeking to use them for illicit purposes." 614 F.3d at 95. The same logic applies here. There is nothing "law-abiding" about possessing a gun with

an obliterated serial number. The only purpose of such guns is to evade law enforcement and engage in illicit activities. *See also United States v. Colon-Quiles*, 859 F. Supp. 2d 229, 234 (D.P.R. 2012) (rejecting Second Amendment challenge in part because "this Court cannot identify any lawful purpose that would be served by obliterating a serial number on a firearm"). Because the Defendant's possession of the gun with an obliterated serial number was not for a "lawful purpose," the conduct is outside the ambit of the Second Amendment's text. Indeed, Just as the government can impose regulations to identify which individuals may lawfully possess firearms, it can also impose regulations allowing it to identify particular firearms.

Finally, the Defendant's conduct was not covered by the text of the Second Amendment because possession of a firearm with an obliterate serial number has nothing to do with self-defense. The use of a firearm for self-defense is the "central" facet the Second Amendment is designed to protect. *Heller*, 554 U.S. at 628. As the *Marzzarella* Court aptly noted, "[b]ecause the presence of a serial number does not impair the use or functioning of a weapon in any way, the burden on Marzzarella's ability to defend himself is arguably de minimis. Section 922(k) did not bar Marzzarella from possessing any otherwise lawful marked firearm for the purpose of self-defense, and a person is just as capable of defending himself with a marked firearm as with an unmarked firearm. With or without a serial number, a pistol is still a pistol." 614 F.3d at 94. In this way, the serial number requirement does not infringe any right to self-defense, and hence Defendant's conduct is not squarely within the text of what the Second Amendment was designed to protect.

2. *The prohibition on possession of firearms with obliterated serial numbers is consistent with the historical tradition of firearms regulation.*

Even if the Defendant's conduct was covered by the text of the Second Amendment, his challenge still fails because there have long been laws that require firearms and ammunition to be marked or that prohibit the transport or disposition of noncompliant materials. These laws, which are analogous to § 922(k), show that the Second Amendment

is not offended by laws that require the marking and tracking of firearms and that prohibit the possession of noncompliant firearms.

This historical perspective shows that the Second Amendment was not offended by laws that required markings on guns and gunpowder before they could be sold, manufactured, and, in some instances, possessed. Numerous laws early in the country's history restricted the movement of unmarked guns and gunpowder and prohibited tampering with such markings, similar to the manner in which § 922(k) restricts obliterating a serial number. There have been proscriptions on the commercial sale and transport of firearms since the Founding Era. Courts have recognized that "colonial governments substantially controlled the firearms trade." *Teixeira v. City of Alameda*, 873 F.3d 670, 685 (9th Cir. 2017).

For example, "a 1652 New York law outlawed illegal trading of guns, gun powder, and lead by private individuals. A 1631 Virginia law required the recording not only of all new arrivals to the colony, but also 'of arms and munitions' … In the 1800s, three southern states imposed taxes on personally held firearms." Robert Spitzer, *Gun Law History in the United States and the Second Amendment Rights,* 80 Law & Contemp. Probs. 55, 76 (2017); *see also* Meg Penrose, *A Return to the States' Rights Model: Amending the Constitution's Most Controversial and Misunderstood Provision*, 46 Conn. L. Rev. 1463, 1483 (2014) ("The Founders would likely challenge the notion that the government could not register weaponry or prohibit gun ownership. Unlike modern Americans, the founding generation endured mandatory gun registration as a basis for ensuring a functional militia, and routinely disarmed those considered threatening to the established social order.")

Similarly, in the early 17th century, Connecticut banned residents from selling firearms outside the colony. Teixeira, 873 F.3d at 685. Virginia likewise provided that people were at "liberty to sell armes and ammunition to any of his majesties loyall subjects inhabiting this colony." *Id.* at 698. And other colonies "controlled the conditions of trade" in firearms. *Id*. at 685. Further, and consistent with this Founding Eratradition, States

continued to enact laws governing "the manufacture, sale, [and] transport" of guns and ammunition in the 18th and 19th centuries. Spitzer, 80 Law & Contemp. Probs. at 74.

In *Heller*, the Supreme Court specifically provided that its ruling would not call into question regulations on the "commercial sale of arms." *Heller*, 554 U.S. at 627. This example was included in a laundry list of "longstanding" prohibitions that were to be considered "presumptively valid" because of the historical recognition and vintage. *Id*. at 626. And the Court noted that its list was not exhaustive. Section 922(k) is clearly a statute affecting, and relating to, the commercial sale of firearms and such regulations were consistent with laws then in existence during the relevant periods.

In sum, historical sources demonstrate a wide panoply of laws from the Founding Era which required firearm "registration" and which heavily regulated the sale and transfer of firearms. Although not identical to the historical statutes, *Bruen* made clear that the government need only identify a "historical *analogue*, not a historical *twin*." 142 S. Ct. at 2133. And because serial numbers did not exist at the time of the founding, the government need not point to an identical statute. The ultimate question is "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Bruen*, 142 S. Ct. at 2133. Section 922(k) satisfies that test because it serves the same interests as historical gun regulations (the protection of gun users and prevention of crime) and it does so by imposing a comparatively slight burden (prohibiting the obliteration of serial numbers rather than disarming people). *Bruen*'s holding, therefore, did not render Section 922(k) unconstitutional.

//
//
//
//
//
//

# IV.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that Defendant's motion be denied.

Dated:     December 24, 2022      RANDY S. GROSSMAN

United States Attorney

s/ Connie V. Wu
CONNIE V. WU
Assistant United States Attorney